ELEVATING BOATS, INC. and
Meldeans, Inc.

v.

GULF COAST MARINE, INC., American Bankers Insurance Company of Florida, Manser Insurance Agency and Jersey International, Inc.

Civ. A. No. 80–1000.

United States District Court,
E.D. Louisiana.

Aug. 15, 1984.

Roy A. Raspanti, New Orleans, La., for plaintiffs.

Mike Maginnis, Timothy P. Hurley, New Orleans, La., for defendants American Bankers Ins. Co. of Fla., Gulf Coast Marine, Inc., and Jersey Intern., Inc.

John I. Broders, New Orleans, La., for defendant Manser Ins. Agency.

OPINION

CASSIBRY, Senior District Judge.

This is a suit to enforce a contract of marine insurance and to recover for alleged negligence on the part of three of the defendants who, it is claimed, failed to convey timely notice of plaintiffs' claim to the un-

derwriters of the policy. Trial was had before the court sitting without a jury on two consecutive days in mid-March of this year. After having heard and considered all of the evidence presented at trial, the court found in favor of the defendants and against the plaintiffs. The court now makes its findings of fact and conclusions of law in support of its judgment.

FINDINGS OF FACT

1. This lawsuit has its antecedents in an earlier state court action. On January 4, 1978, Woodrow W. Rivers filed suit against Elevating Boats, Inc., Meldeans, Inc. and Schlumberger Well Surveying Corp. ("Schlumberger"), in the 30th Judicial District Court, Parish of Vernon, Louisiana. Rivers was the captain and sole crew member of the M/V BILLIOT ELEVATOR, a vessel owned by plaintiff, Elevating Boats, and operated by plaintiff, Meldeans. Elevating Boats was, at all material times, engaged in the business of building, selling, and/or leasing jack-up or "elevating" boats for use in the offshore oil industry. Meldeans was, at all material times, the operating arm of Elevating Boats and provided the crewmen to serve its vessels.

On January 28, 1977, while in the employ of Meldeans, Rivers fell into a large hole on or near a pier owned or operated by Schlumberger. In his state court action, Rivers sought to recover under the Jones Act and general maritime law for the injuries he sustained in this fall. After a trial held on May 1 and 2, 1979, judgment was rendered in favor of Rivers and against Meldeans in the sum of $229,000.00, with interest at the rate of 7% per annum from the date of judicial demand. Elevating Boats and Schlumberger were exonerated from liability. The judgment was affirmed on appeal. *Rivers v. Schlumberger,* 389 So.2d 807 (La.App.1980).

2. At the time of Rivers' injury, Elevating Boats and Meldeans were insured under a policy of marine protection and indemnity coverage issued by defendant American Bankers Insurance Company of Florida ("American Bankers"). The policy,

No. 6 MA 1444, provided coverage for claims up to $900,000 with a $100,000 deductible. Under the section of the policy's Form SP–23 entitled "General Conditions and/or Limitations", the Notice of Claims provision states as follows:

Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which this assured is or may become liable, the assured will use due diligence to give prompt notice thereof and forward to the insurer as soon as practicable after receipt thereof, all communications, processes, pleadings and other legal papers or documents relating to such occurrences.

3. Plaintiffs had retained defendant Manser Agency, Inc. ("Manser"), an independent insurance agency, to obtain marine insurance coverage for the vessels owned and operated by them. Manser arranged this coverage for plaintiffs through defendant Gulf Coast Marine, Inc.

4. Gulf Coast Marine was a marine insurance broker which acted in conjunction with defendant Jersey International, Inc. ("Jersey International" or "Jersey") and American Bankers in obtaining protection and indemnity policy No. 6 MA 1444 from American Bankers.

5. Pursuant to a management agreement between Jersey International and American Bankers, Jersey International acted as the underwriting and servicing arm of American Bankers for its ocean marine insurance and reinsurance business. According to the explanation given by Jere Duffett, senior vice-president for claims of Jersey International, Jersey International was not under the day-to-day supervision of American Bankers. Pursuant to the terms of the managing agreement, Jersey International had no obligation to notify American Bankers of a claim unless it established reserves against liability in excess of $50,000 on the claim.

6. Of these defendants, only American Bankers was an insurer. Jersey International was its underwriting manager, Gulf Coast Marine was an insurance broker and Manser was an independent agent. Jersey had no direct dealings with Manser and Manser had no authority to write a policy for Jersey. Jersey had no written agreement with Gulf Coast Marine and did not consider it to be its agent. Manser was a small agency with no affiliation with Gulf Coast Marine, Jersey or American Bankers.

7. The plaintiffs were aware of the accident and injury to Rivers within a matter of days after the incident occurred. Plaintiffs did not give notice of the occurrence to their insurance agent, Manser.

8. Contrary to plaintiffs' expectations, Rivers did not return to work after his injury. He continued to receive medical treatment and, in November 1977, underwent back surgery.

9. Plaintiffs had previously been made aware of the possibility that Rivers' claim might exceed the $100,000.00 deductible under the policy. In June of 1979, Elevating Boats received a letter from Rivers' attorney indicating that Rivers might be totally and permanently disabled. Plaintiffs neither notified Manser nor initiated their own investigation of the seriousness of Rivers' injuries at this time.

10. In January 1978, Rivers filed his action against the plaintiffs herein and Schlumberger. After receiving the summons and petition, Elevating Boats and Meldeans engaged George Dowd to represent them. Lynn Dean, president of Meldeans, acted in this case in accordance with his usual practice of not retaining counsel prior to the filing of a lawsuit. Dean mailed Dowd a copy of the petition and informed him that he had notified his insurer. Dowd himself had no contact with Manser or any of the other defendants herein on the Rivers suit.

11. As the scheduled trial date of May 1, 1979 approached, Dean and Dowd conferred as to why the insurer's lawyers had not yet entered the Rivers case. Since it was not uncommon for plaintiffs' insurer to remain aloof from the proceedings until shortly before trial, they had not been con-

cerned previously about the insurer's absence.

12. On or about April 16, 1979, Alvin Pike of Gulf Coast Marine received an undated, handwritten letter from Dean advising him of the scheduled trial date of the *Rivers* case and enclosing a copy of the petition.[1] The letter was sent as a follow-up to a telephone conversation between Dean and Pike. Dean testified that since he knew the letter would be postmarked, he saw no reason to date it. Pike turned the letter over to Gulf Coast Marine claims manager, Glenn Calabresi.

13. Calabresi immediately phoned Duffett at Jersey's offices and advised him of the suit. The following day, Calabresi mailed a copy of Dean's letter and the accompanying petition to the offices of Jersey. Calabresi also reviewed Gulf Coast Marine's records and found no indication of prior notice of the suit.

14. On April 26, 1979, Jere Duffett wrote to Dean and Elevating Boats on behalf of American Bankers advising them that the Rivers claim had never been reported to the underwriter and informing them that coverage under Policy No. 6 MA 1444 would be denied.

15. Plaintiffs, upon receipt of the letter denying coverage, took no action to continue the trial or to contest the denial of coverage. Dean had no desire to have the trial delayed. Dowd testified that had the insurer made an effort to obtain a continuance, his clients would have opposed it. Dean testified that he had successfully settled or defended more than two dozen other personal injury claims and that he fully expected to prevail against Rivers as well. Since he expected to win the *Rivers* case, he saw no need to take any action against his insurer at that time.

16. For the first time in years, however, Elevating Boats and Meldeans did not win. The *Rivers* court, sitting without a jury, cast Meldeans in judgment for a sum in excess of $200,000. Meldeans appealed

and the judgment was affirmed. This suit was filed during the pendency of the appeal.

17. The central question of fact in this case is whether plaintiffs notified Manser when they claim they did, namely shortly after the filing of Rivers' suit. Dean testified that, in accordance with the procedure he had been accustomed to follow, he notified Manser by telephone in January of 1978 that a suit had been filed. He did not, however, send his agent a copy of the petition. It was Dean's testimony that, in his dealings with Manser, he had never been asked to provide a copy of the petition or forward communications relating to the case.

In essence, plaintiffs presented a theory of office error. Plaintiffs met the notice requirement of the policy, according to their theory, when Dean telephoned Manser. It was then Manser's obligation to convey the information along the line of placement to American Bankers. Plaintiffs have identified no break in the chain but implicit in their theory is the notion that Manser failed to notify the other defendants. I find no support for such an inference and no evidence of any negligence on the part of any of the defendants.

18. Defendants' evidence of their normal operating procedures undercuts the plaintiffs' explanation for the lack of notice to the insurer prior to mid-April, 1979. Pansy Solberg, vice-president of Manser, had sole responsibility for all claims reported to the office. She was also the Manser representative with whom Dean routinely communicated in connection with plaintiffs' insurance business. It was Solberg's practice to make notes of her telephone conversations and to make a request for the pleadings in any suit filed against an insured. She testified that no notification was ever received by Manser from Dean or anyone else regarding the claim brought by Rivers. In dealing with Dean in the five

---

**1.** In the ordinary situation, Dean would have been expected to notify Manser of a suit. Manser, however, had gone out of business a short

time before. Therefore, Dean reported to Gulf Coast Marine.

years that Manser had been plaintiff's insurance agent, Solberg had learned that it was not Dean's practice to report claims. Manser usually found out about claims against the plaintiffs via reports from third parties, often oil companies named as co-defendants in the actions.

Manser, moreover, was not the only defendant who had experienced notification problems with the plaintiffs. Jersey, too, was "frustrated" by its dealings with Dean. Only two months earlier, Jersey had sent plaintiffs a similar letter denying coverage because of late notice.

19. Thus, I find the greater weight of the credible evidence to be on the side of the defendants. In the course of this trial, it became obvious that Dean, the motive force behind both Elevating Boats and Meldeans, is a successful independent businessman with little use for insurance companies or lawyers. Dean acted as his own claims manager and took a "dim view" of the disability claims he handled. In this case, Dean expected Rivers to be back on the job in a matter of weeks. But, as he put it, "when attorneys get involved, things change."

Dean's antipathy to insurance companies was also evident. Elevating Boats and Meldeans carried insurance primarily at the behest of its oil company clients who required coverage as a condition of doing business. Plaintiffs had cancelled their previous coverage because its insurer had forced settlements on them. Dean had specifically selected a policy with a $100,000 deductible in order to allow him to settle the claims himself and "avoid the little squabbles." He prided himself on his ability to settle these matters without the necessity of insurance company involvement or trials.

Dean's policy of fighting suits was well known to his insurance agent and kept costs down in two ways. Elevating Boats and Meldeans maintained a good loss record and thereby kept their premiums low. Dean's aggressive policy also kept settlement costs down.

Thus, plaintiffs had every reason to delay notifying Manser. They simply did not want their insurer involved. Dean's success rate in settling and defending claims was high. When the *Rivers* case went to trial, Dean was confident of yet another successful defense. He just happened to be wrong in this case.

Therefore, I find that defendants first received notification of the Rivers claim in mid-April of 1979 when Dean contacted Gulf Coast Marine. Neither Manser, Gulf Coast Marine, Jersey International nor American Bankers had received any prior notice of the Rivers claim.

20. I have found that plaintiffs gave notice of the Rivers claim long after they first knew of it. It is now obvious that plaintiffs' late notice caused substantial prejudice to the defendants. The principal consequence of the delayed notice is that defendants were deprived of the opportunity to make their own prompt investigation of the claim, to examine the site of the accident, and to interview witnesses while their recollections were still fresh. In addition, defendants had no opportunity to make their own evaluation of the seriousness of Rivers' injuries.

The policy, moreover, gave American Bankers the option of appointing its own counsel to represent its interests. It cannot be said that plaintiffs' attorney conducted a vigorous representation of the insurer's interest in this case. For example, he never requested that Rivers submit to a medical examination by a doctor selected by the defendants to the personal injury action. During the entire course of the litigation, Dowd never contacted any of the defendants to report on the case.

Finally, I find prejudice because American Bankers lost the opportunity to settle the case for less than the judgment ultimately awarded. The testimony of Rivers' attorney reveals his client's readiness to accept a settlement figure approximately half the size of the final judgment.

Taken together, these factors amount to actual prejudice to the insurer as a direct result of the late notice of Rivers' suit.

## CONCLUSIONS OF LAW

1. This is an action on a contract of marine insurance over which the court has jurisdiction pursuant to its admiralty jurisdiction. 28 U.S.C. § 1333; *Offshore Logistics Services, Inc. v. Mut. Marine Office*, 639 F.2d 1168, 1170 (5th Cir.1981).

2. The interpretation of a policy of marine insurance is a matter of federal law. *St. Paul Fire and Marine Insurance v. Vest Transp. Co.*, 666 F.2d 932, 941 (5th Cir.1982).

3. Plaintiffs have alleged that American Bankers' denial of coverage under policy No. 6 MA 1444 constituted a breach of the insurance contract. Plaintiffs have not, however, contended that the notice provision in the policy is in any way ambiguous. Nor do I find any ambiguity in the notice provision which would call for interpretation under the facts presented in this case. Absent a latent or patent ambiguity, the meaning of a contract is a matter of law to be decided by the court. *Christopher v. Safeway Stores, Inc.*, 644 F.2d 467, 471 (5th Cir.1981). The question of whether an ambiguity exists which would require a decision by the court in this case is also a question of law. *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1175 (5th Cir.1981). Rather than attempting to prove the notice provision ambiguous or otherwise inapplicable, plaintiffs offered testimony to demonstrate their compliance with the notice provision. I have found, however, that plaintiffs did not meet the requirements of prompt notification demanded by their policy of insurance.

I further find that the notice provision is neither unreasonable nor invalid as offensive to public policy. *See Scarborough v. Travelers Insurance Co.*, 718 F.2d 702, 707 (5th Cir.1983). Sound policy supports this notice provision as a reasonable precondition to an insurer's liability. Without it, an insurer would be handicapped in its investigation of claims and threatened with unexpected exposure to liability with the attendant risk of insufficient reserves to pay claims against it.

4. As a rule, contracts of insurance are to be construed in accordance with general principles of contractual construction. *See, e.g., Porter v. American Optical Corp.*, 641 F.2d 1128, *cert. denied*, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). Thus, any doubt as to the meaning of a disputed provision in an insurance policy must be resolved against the contract's drafter, the insurer. *McDaniels v. Great Atlantic & Pacific Tea Co.*, 602 F.2d 78, 81 (5th Cir.1979). Here, however, the meaning of the notice provision is clear. It placed upon the insured the obligation of conveying to the insurer prompt notice of legal proceedings which might result in the insurer's liability. As such, the notice provision in the policy constituted a condition precedent to American Bankers' obligation to provide coverage for the Rivers claim. *See Hague v. Liberty Mutual Ins. Co.*, 571 F.2d 262, 267 (5th Cir.1978).

5. I have already found that plaintiffs failed to give timely notice to its insurer of the suit against it. I have further found that this failure prejudiced the insurer in responding to the claim. Where actual prejudice is found, a breach of a condition precedent to the insurer's obligation to provide coverage will excuse the insurer's duty to provide coverage under the policy. *Hague*, 571 F.2d 262. Therefore, plaintiffs are not entitled to enforce the contract of insurance and may not recover for American Bankers' denial of coverage.

6. Plaintiffs have also contended that Manser, Gulf Coast Marine and Jersey were in some manner negligent in failing to notify American Bankers of the plaintiffs' claim. I have already found that there is no evidence of any such negligence on the part of any of the defendants. Defendants breached no duty owed the plaintiffs because the plaintiffs did not give notice of the Rivers claim to any of the defendants prior to April of 1979. These three defendants did not fail to transmit notice up the line of placement and, thus, can have no liability for negligence.

7. Based on the foregoing findings of fact and conclusions of law, I find that plaintiffs, Elevating Boats and Meldeans, have not proved their entitlement to any recovery from defendants Manser, Gulf Coast Marine, Jersey International or American Bankers. Therefore, defendants are entitled to judgment in their favor and against plaintiffs, dismissing plaintiffs' claims. Judgment to be entered accordingly.