STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-60

GEORGE MICHAEL ORR

VERSUS

OTTO CANDIES, INC., ET AL.

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 90146
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Sylvia R. Cooks, Billie Colombaro Woodard, and Marc T. Amy,
Judges.

**AFFIRMED.**

**Keenan K. Kelly**
**Kelly, Townsend & Thomas**
**Post Office Box 756**
**Natchitoches, LA   71458-0756**
**(318) 352-2353**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **George Michael Orr**

**L. Etienne Balart**
**Jones, Walker, Waechter, Poitevent, Carrère & Denègre, L.L.P.**
**201 St. Charles Avenue - 48ᵗʰ Floor**
**New Orleans, LA   70170-5100**
**(504) 582-8000**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Iran Alexander**
     **D & D Fuel Dock, Inc.**

AMY, Judge.

The plaintiff, a merchant marine, filed suit for damages after he sustained injury on the defendant's property. The trial court found in favor of the defendant, concluding that any fault for the fall was to be equally apportioned between the plaintiff and the plaintiff's employer. The plaintiff appeals. For the following reasons, we affirm.

**Factual and Procedural Background**

The plaintiff, George Michael Orr, was employed by Otto Candies, Inc., as a mate aboard the M/V *Ferdie Candies*, a push boat. The record indicates that, at the time of the accident in question, the *Ferdie Candies* was engaged in fleet work in the Port of Iberia. The accident occurred in the late evening of March 4, or the early morning of March 5, 1998, after the *Ferdie Candies* traveled to the business of the defendant, D&D Fuel Dock, to take on water. As the *Ferdie Candies* was not taking on fuel, the vessel was moored to the south side of the facility, where it had been granted permission to take on water. D&D Fuel Dock did not charge for the cost of the water provided.

According to the plaintiff, when he awoke from a nap on the evening of March 4, he informed his shipmates he would take on the task of disconnecting the water hose. His shipmates returned to their quarters before he began to do so. In the petition instituting this matter, the plaintiff alleged that while he was completing the task, he sustained severe injuries when he stepped into a hole. The plaintiff sought recovery for related damages pursuant to La.Civ.Code arts. 2315, 2317, and 2317.1.[1]

---

[1] The plaintiff also brought suit against Otto Candies, seeking relief under the Jones Act and General Maritime Law. The matter against Otto Candies was settled prior to resolution of the instant matter and is not now at issue.

The "hole," at issue is described in the record as area of "washout" along the bulkhead on the defendant's property. The existence of the condition is not contested. However, D&D Fuel Dock points out that the fall occurred on a bulkhead located on the south side of its property, an area where it does not conduct regular business. D&D Fuel Dock provided testimony indicating that its business operations of providing fuel and oil are conducted on an improved fueling dock. Furthermore, D&D Fuel Dock contends, the *Ferdie Candies* was warned of the condition when permission was granted for the vessel to take on the water.

Following a bench trial, the trial court ruled in favor of the defendant. Written reasons for ruling reveal a finding that D&D Fuel Dock acted reasonably as it informed the plaintiff's employer of the condition along this area of its bulkhead. The court found that the cause of the fall was the combined negligence/fault of the plaintiff and his employer, Otto Candies. In particular, the trial court referenced the plaintiff's entry on to the property at night when he could not see the ground.

The plaintiff appeals, assigning the following as error:

[1.] The Trial Court erred in its finding that the Defendant/Appellee, D&D Fuel Dock, Inc., breached no duty to Plaintiff/Appellant, George Michael Orr.

[2.] The Trial Court erred in its application of the law regarding Defendant/Appellee, D&D Fuel Dock, Inc.'s, duty to Plaintiff/Appellant, George Michael Orr.

[3.] The Trial Court erred in its finding that the sole cause of Plaintiff's accident and injuries was the fault of Plaintiff's Jones Act employer and Plaintiff.

[4.] The Trial Court erred in failing to award damages to Plaintiff/Appellant, George Michael Orr.

2

**Discussion**

*Liability*

With regard to the issue of the liability of D&D Fuel Dock, the plaintiff argues that the trial court erred in concluding that the defendant satisfied any duties owed. The plaintiff contends that it was error for the trial court to conclude that any duty required of the defendant was satisfied by D&D informing the captain of the *Ferdie Candies* of the washouts. Furthermore, the plaintiff points out that the washouts were a longstanding condition of the bulkhead area and that there was no operational lighting on the portion of D&D Fuel Dock. He requests that this court find D&D Fuel Dock at least 50% responsible for the accident.

In ruling on the matter, the trial court extensively reviewed the facts of the case, making numerous factual findings, and ultimately concluded:

> Under Louisiana Civil Code article 2317.1, there are certain duties on D&D in connection with its property. However, D&D met its duty on its property by advising and warning the captain of the Ferdie Candies of the washouts, of their danger, and of their existence. Thus, D&D did not breach its duty in that it appropriately warned the appropriate person with the Ferdie Candies, the captain, of the dangers of traversing their land. D&D is not the insurer of the safety of the visitors and is only under a duty to keep the premises in a reasonably safe condition for use in a manner consistent with the purpose for which the premises was intended. David v. Roen, 520 So.2d 820 (3 Cir. 1987). The landowner is not liable for an injury resulting from a condition which the landowner has adequately warned and advised the supervisor of the plaintiff. In this case D&D exercised reasonable care in advising the supervisor of the plaintiff. In this case D&D exercised reasonable care in advising the captain of the Ferdie Candies of the location and existence of the unhidden washouts. D&D, as operator of the premises, only had the duty to act reasonably in view of the probability of injury to the others. Shelton v. Aetna Casualty and Surety Company, 334 So.2d 406 (La.1976). D&D was reasonable in the manner in which it carried out its duty to warn of the existence of the washouts. First, the area of land where the Ferdie Candies desired to obtain water was not the work premises of D&D. The area was not illuminated and such was obvious to [Relief Captain] Jude Guilliot and the captain of the vessel, Glenn Guidry. Additionally, the washout areas were obviously visible and observable by them. The captain and relief captain of the Ferdie Candies

3

chose to have their vessel loaded with water in this area with washouts instead of in the improved dock area of D&D around the canal.

George Michael Orr as a seaman and one of years of experience has a duty to act reasonably to protect himself. A seaman meets this standard by acting as a reasonable seaman would act under the circumstances. Muhammad v. Diamond Services Company, 822 So.2d 869 (3 Cir. 2002). George Michael Orr testified that he could not see the ground where he was walking. He testified that he could not see his feet. He testified that there was no illumination. For a seaman to proceed across an area of land adjacent to a waterway and bulkheaded with wood between the waterway and the land without knowing and being able to see the condition of the land has no concern for his own safety. George Michael Orr filled out a document in connection with the accident which was introduced as Defendant's Exhibit 2. Question number 6 was who was supervising his work at the time. His statement was that it was his responsibility. In filling out another accident report introduced as Defendant's Exhibit 1, question 15, subpart (d) asked if the accident was the result of the individual's own negligence. George Michael Orr answered the question as no, just his stupidity.

This Court finds that the accident of George Michael Orr on March 4, 1998, or March 5, 1998, in the early morning hours resulted from the combined negligence and fault of Otto Candies, the employer of George Michael Orr, and of George Michael Orr. Certainly a person cannot proceed in the dark where they cannot see the ground and not obtain illumination or lighting and then seek to recover from a third party such as D&D because they fall into a washout, which is a natural condition on the land, because they could not see it in the dark.

The plaintiff in this case sought recovery under the principles enunciated in

La.Civ.Code arts. 2315, 2317, and 2317.1. These articles provide:

**Art. 2315.          Liability for acts causing damages**
          A.      Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
          B.      Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person. Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease. Damages shall include any sales taxes paid by the owner on the repair or replacement of the property damaged.

**Art. 2317.          Acts of others and of things in custody**

4

We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.

**Art. 2317.1.        Damage caused by ruin, vice, or defect in things**
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

The negligence cause of action described in Article 2315 is analyzed under the duty/risk analysis. Under this analysis, the plaintiff must prove that: "[T]he conduct in question was the cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached." *Posecai v. Wal-Mart Stores, Inc.*, 99-1222, p. 4 (La. 11/30/99), 752 So.2d 762, 765. As noted by the supreme court in *Posecai*, the question of whether a duty exists or is owed is a question of law. *Id.* However, the decision as to "whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented." *Id.* at 766.

In a case brought under La.Civ.Code art. 2317, that traditionally styled as one of strict liability, the plaintiff bears the burden of proving that the vice or defect of the property in question is a condition posing an unreasonable risk of harm to others. *Boyle v. Board of Supervisors*, 96-1158 (La. 1/14/97), 685 So.2d 1080. Similar to the negligence requirement that a risk of harm is within the scope of the duty owed under the facts and circumstances present in a particular case, the determination as to the existence of an unreasonable risk of harm must be made using a risk/utility analysis,

5

*i.e.*, "made 'in light of all relevant moral, economic, and social considerations.'" *Id.* at 1082, *quoting Celestine v. Union Oil Co. of California*, 94-1868 (La. 4/10/95), 652 So.2d 1299. Findings regarding whether an unreasonable risk of harm exists are considered on appeal under the manifest error standard of review. *Reed v. Wal-Mart Stores, Inc.*, 97-1174 (La. 3/4/98), 708 So.2d 362.

With the enactment of La.Civ.Code art. 2317.1, a "knowledge" element was added to the burden of proof required of those seeking to recover under La.Civ.Code art. 2317. As can be seen in the wording of Article 2317.1, the plaintiff must demonstrate, not only the presence of a vice or defect within a defendant's custody or control, but he or she must also demonstrate a defendant's knowledge or constructive knowledge of that condition. Furthermore, Article 2317.1 requires that the plaintiff demonstrate that the alleged damage "could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care."

Reference to the trial court's reasons reveal a finding that D&D Fuel Dock acted "reasonably" given the condition on their property. Whether viewed as a finding that the plaintiff failed to demonstrate that the defendant breached a duty owed under the facts and circumstances presented or a finding that the injuries occurred despite the "exercise of reasonable care," the trial court's decision is supported by the record.

D&D Fuel Dock's President, Steven Migues, testified that he was aware of the washouts near the bulkhead and that they were caused by erosion related to dredging of the adjacent waterways. Due to this condition, Mr. Migues and the company's Operations Manager, Hollis Firmin, testified that boats mooring on this unimproved area of the property were warned of the condition. In this regard, Mr. Firmin testified

6

that he explained the condition to the captain of the *Ferdie Candies*. He explained as follows:

> Q. Do you recall if you ever spoke with anybody on the Ferdie Candies back in March of 1998?
>
> A. Yes, sir.
>
> Q. Okay. Tell me about that.
>
> A. Ferdie Candies pulled up bow first. I imagine it was the captain stepped out [of] the wheel house and spoke to me about taking on water. I said, "Well, yes, you can. If you're going to be here a while, use the little water spigot with the water hose. But, for God's sakes, they got little - they got holes right here. Please just be very, very careful that you step and watch what you're doing." He told me no problem whatsoever.

Mr. Firmin explained that he spoke only with the captain, no other crewmembers. He denied knowing that anyone else had ever fallen due to the washouts. Further questioning revealed:

> Q. Now isn't it true that normally the other side of the dock was used, the north side? Most boats docked over on this side, the side where fuel is taken on, correct? (Indicating.)
>
> A. Fuel and oil, correct.
>
> Q. And to your knowledge, there were no washouts or crevices on this side, were there?
>
> A. No, sir, not right there.
>
> Q. And - but yet you gave them permission to dock on this side and take on water on this side?
>
> A. That's where they pulled in, because they didn't want to tie up my dock whatsoever since they weren't taking on any fuel.
>
> . . . .
>
> Q. And you were aware that they created an unreasonable risk of harm, aren't you?
>
> A. Well, yes. That's the reason I warned the captain or whoever I spoke to.

The plaintiff denied that he personally had been informed of the uneven terrain. Furthermore, Captain Glenn Guidry testified that he and Relief Captain Jude Guillot were aware of the washout condition near the bulkhead.

The trial court credited the above testimony indicating that the area was an unimproved one generally not used by customers; that notice was provided to the *Ferdie Candies* of the condition; and despite this notice,[2] *Ferdie Candies* personnel permitted Mr. Orr to enter onto the property, at night, so that the vessel might take on water. We find no manifest error in the trial court's determination that the defendant's actions were reasonable given all of the circumstances. *See* La.Civ.Code art. 2317.1 (requiring proof that "the damage could have been prevented by the exercise of reasonable care, and that [the defendant] failed to exercise such reasonable care").

The plaintiff advances *Rivers v. Schlumberger Well Surveying Corp.*, 389 So.2d 807 (La.App. 3 Cir. 1980), for the proposition that even though the claimant's employers may be aware of a defect on the land, a dock owner retains a nondelegable duty to provide a safe method of passage.[3] In *Rivers*, the plaintiff fell into a washout near a dock where his employer's vessel was berthed. The dock was owned by one of the defendants, Schlumberger. Schlumberger also operated the vessel on which the plaintiff was serving as Captain. Unlike the present case, the court in *Rivers* was asked to resolve Jones Act and General Maritime Law issues. In particular, the court

---

[2]Although the plaintiff contests the trial court's determination that the *Ferdie Candies* was warned of the condition, the record supports the factual/credibility determinations made in this regard as is evidenced by the testimony of Mr. Firmin.

[3]The plaintiff quotes the following passage from the opinion:

> Schlumberger furnished the dock in question. It also had a duty to keep the dock area in a safe condition. Schlumberger was clearly negligent in failing to perform its duty and such negligence, along with the negligence of Meldeans, caused the accident by not filling the hole where Rivers fell.

*Id.* at 817.

was concerned with identifying the plaintiff's Jones Act employer. Of interest to this case, however, is the discussion of the washouts and the fact that all involved were aware of the defect on the land. The appellate panel in *Rivers* noted that the plaintiff's petition was one under Jones Act and General Maritime Law, and did not request relief under La.Civ.Code art. 2315. This styling of the petition under federal law, the court explained, precluded its finding of liability on the part of Schlumberger for the condition of the dock. Given the general discussion referencing a nondelegable duty by the dock owner, Mr. Orr argues, the case stands for the proposition that the employer's knowledge of the condition does not preclude a finding of fault on the part of the dock owner.

Notwithstanding the fact that the discussion in *Rivers* was not the court's central focus, the case does not indicate that a reversal is required in the present case. This is not a case of whether the property owner owed a nondelegable duty.[4] Here, the trial court considered the particular facts of this case concluding that any duty owed by the property owner was not breached, *i.e.*, that the property owner/defendant acted reasonably given "the unique facts and circumstances presented." *See Posecai*, 752 So.2d at 766. In other words, and in keeping with that aspect of the plaintiff's claim insofar as it may arise under La.Civ.Code arts. 2317 and 2317.1, the defendant exercised "reasonable care."

---

[4]In addition to *Rivers*, the plaintiff references other cases he contends indicate that the property owner's duty is a nondelegable one. *See Billiot v. State of Louisiaina, DOTD*, 94-1364 (La.App. 3 Cir. 4/12/95), 654 So.2d 753, *writs denied*, 95-1648, 95-1772 (La. 11/13/95), 662 So.2d 467; *Brown v. Saupenne*, 416 So.2d 170 (La.App. 4 Cir. 1982). Again, the issue in this case is not whether a duty was owed or whether an unreasonable risk of harm existed. Rather, the question, as framed by the trial court's reasons, is whether that duty, insofar as it existed given the facts and circumstances presented, was breached under Article 2315 or whether the defendant exercised reasonable care in response to any unreasonable risk of harm under Article 2317 and Article 2317.1.

According to the trial court's findings, which is supported upon review of the record, the defendant and the employer were aware of the washouts contained on an area of the property on which commercial activities were not typically performed. Instead, the area was an unimproved portion of the property at which the defendant did not conduct regular business activities. Furthermore, whether the defendant's responsibility or that of the employer, the defendant entered the property in the dark and did so without providing/ensuring sufficient illumination. The plaintiff testified that it was sufficiently dark that he did not think that he could see his feet while performing his tasks. These factors, it appeared, resulted in the trial court's determination that the defendant acted reasonably. Given the circumstances in this case, we find no manifest error in these determinations.

This assignment lacks merit. Our above finding pretermits discussion of the plaintiff's assertions regarding damages.

## DECREE

For the foregoing reasons, the decision of the trial court is affirmed. All costs of this proceeding are assessed to the plaintiff, George Michael Orr.

**AFFIRMED.**