# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**04-951**

BARBARA ANN COMEAUX, ET AL.

VERSUS

WRANGLERS NIGHT CLUB (BAR AND LOUNGE), ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 995610
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of John D. Saunders, Marc T. Amy, and Billy Howard Ezell, Judges.

**AFFIRMED.**

Vincent P. Fornias
C. William Belsom, Jr.
Kantrow, Spaht, Weaver & Blitzer
Post Office Box 2997
Baton Rouge, LA   70821-2997
(225) 383-4703
COUNSEL FOR DEFENDANT /APPELLEE:
    Scotty Darby

James L. Pate
Brad O. Price
Jean-Louis Lemoine
Laborde & Neuner
Post Office Box 52828
Lafayette, LA   70505-2828
(337) 237-7000
COUNSEL FOR DEFENDANTS/APPELLEES:
    The Chief of Police for the Carencro Police Department
    The Carencro Police Department
    The City of Carencro

**Barry L. Domingue**
**Simon Law Offices**
**Post Office Box 52242**
**Lafayette, LA   70505**
**(337) 232-2000**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**Robert Darby Enterprises, Inc.**
**Robert Darby**
**Wranglers Night Club**

**Hany A. Zohdy**
**12090 South Harrell's Ferry Road, Suite J**
**Baton Rouge, LA   70816**
**(225) 293-5300**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
**Barbara Ann Comeaux**
**The Family Members of Mark Comeaux on Behalf of Themselves**

AMY, Judge.

The death at issue in this matter followed a visit to the defendant night club. The decedent's family members allege that the death resulted from what they contend was a physical confrontation with an employee of the club and a police officer called to the scene. At the close of the plaintiffs' case, the trial court granted the defendants' motions for involuntary dismissal. The plaintiffs appeal. For the following reasons, we affirm.

## Factual and Procedural Background

This matter involves the events leading up to the November 13, 1998 death of Mark Comeaux. The record indicates that, on the previous evening, Mr. Comeaux and his roommate, Shannon Thibodeaux, visited Wranglers Night Club. It is undisputed that the two men became intoxicated during the evening. At some point, Mr. Comeaux and Mr. Thibodeaux became involved in a physical altercation. The scene brought the attention of Richard Callais, who testified that he was acting as the club's manager as well as a bouncer at the time. The physical altercation continued, with the two men eventually being removed from the club, to the business' parking lot. Testimony indicated that mace was used and that the men were handcuffed.

The record further indicates that Officer Scotty Darby of the Carencro Police Department was called to the scene. The extent of the physical altercation between Thibodeaux, Comeaux, Callais, and Darby is at issue. The plaintiffs presented witness testimony indicating that Mr. Comeaux was struck by Mr. Callais and a police officer. However, both Mr. Callais and Officer Darby denied having struck Mr. Comeaux. Although not taken into custody, both Mr. Comeaux and Mr. Thibodeaux were told to leave the property. Mr. Thibodeaux explained that he left in his own truck with Shawn Andrus. Due to Mr. Thibodeaux's condition, Mr.

Andrus drove the two from the club. Both men denied knowing that Mr. Comeaux was in the back of the truck.

Mr. Andrus testified in his deposition that, while driving at approximately fifty to fifty-five miles per hour on the roadway, he heard a distinctive thump on the truck. He stated that although the noise was not on the roof, he felt that the noise came from a location near his head. Mr. Andrus pulled the truck to the side of the road, looked behind the truck, and found Mr. Comeaux lying in the road. Two witnesses traveling in a vehicle behind the truck also stopped, eventually calling 911. Before assistance arrived, however, Mr. Andrus and Mr. Thibodeaux placed Mr. Comeaux in the truck and traveled to a hospital in Lafayette. The death certificate entered into evidence indicates that Mr. Comeaux's time of death was 5:40 a.m. The "Cause of Death" portion of the certificate lists: Brain death; Closed head injury; and Blunt Force Trauma to Head. A blood ethanol level of 275 mg/dl is listed as a significant condition contributing to the death.

Mr. Comeaux's mother and other family members filed suit seeking damages related to Mr. Comeaux's death. Wranglers Night Club, and the club's owner, Robert Darby d/b/a Robert Darby Enterprises, Inc., and Robert Callais were named as defendants. Carencro Police Department[1] and Officer Scotty Darby were also named as defendants. With regard to Officer Darby, the plaintiffs argued that he was under the supervision and control of the Carencro Police Department and was a borrowed servant of Wranglers Night Club. Finally, the plaintiffs alleged that Officer Darby was liable as part owner/operator of Wranglers Night Club.[2] The plaintiffs asserted

---

[1]Through a supplemental and amending petition, the naming of Carencro Police Department as a defendant was amended to the City of Carencro.

[2]The plaintiffs assert that Officer Darby is the son of club owner Robert Darby. The allegation of Officer Darby's ownership of the club was not pursued at trial.

that Officer Callais and Mr. Darby struck Comeaux, placed him "unconscious or already dead" in the back of the truck and that negligence in the alleged beating and in the handling of the intoxicated Comeaux resulted in his death.

The matter proceeded to a bench trial, with the defendants moving for involuntary dismissal at the close of the plaintiffs' evidence. The trial court granted the motions, finding that the plaintiffs failed to demonstrate that the death was related to activities at the club.

The plaintiffs appeal and, in their brief to this court, present the following two issues for this court's review:

1. The plaintiff met its prudent [sic] of proof against the Wranglers bar and its employees showing that they were negligent in handling Mark Comeaux as a patron, and by further showing that the employees of the bar severely beaten [sic] Mark Comeaux, which action subjects Wrangler to liability fo[]r the tort of its employees.

2. Did the court abuse its discretion in granting the motion for involuntary dismissal despite the overwhelming evidence submitted showing that Mark Comeaux was severely beaten by the bar's employees and that credible evidence submitted that he never fallen [sic] from the truck as alleged.

**Discussion**

The plaintiffs question the trial court's granting of the motions for involuntary dismissal.[3] The plaintiffs assert that the record demonstrates that Wranglers was liable for the action of its employees and that its employees were negligent in their treatment of Mr. Comeaux. Specifically, the plaintiffs contend that the evidence indicates that Mr. Comeaux was beaten by Mr. Callais and Officer Darby while at the

---

[3]The record indicates that the appeal, insofar as it related to Officer Scotty Darby, in his capacity as a police officer, and the City of Carencro was dismissed. The plaintiffs continue to argue, however, that Scotty Darby was working as an employee of the club at the time of the incidents in question, thereby continuing to raise the issue of liability for his actions.

club and that those injuries led to his death rather than a fall from Mr. Thibodeaux's truck. Here, the plaintiffs point to testimony of two witnesses who were following the truck at the time of the incident on the road who explained that they did not see a body fall from the truck. Further, the plaintiffs contend, the employees were negligent in releasing Mr. Comeaux, who was visibly intoxicated, into the hands of other club patrons rather than calling for medical assistance.

In their brief to this court, the plaintiffs reference La.Civ.Code arts. 2315, 2316, 2317, and 2320 as provisions applicable to their claims of liability. These articles provide:

**Art. 2315.   Liability for acts causing damages**
    A.    Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
    B.    Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person. Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease. Damages shall include any sales taxes paid by the owner on the repair or replacement of the property damaged.

**Art. 2316.   Negligence, imprudence or want of skill**
    Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill.

**Art. 2317.   Acts of others and of things in custody**
    We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.

**Act. 2320.   Acts of servants, students or apprentices**
    Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.

        . . . .

4

> The master is answerable for the offenses and *quasi*-offenses committed by his servants, according to the rules which are explained under the title: *Of quasi-contracts, and of offenses and quasi-offenses.*

Those actions stemming from Articles 2315 and 2316 are considered under the duty/risk analysis, which requires that a plaintiff prove that: 1) The conduct complained of was a cause-in-fact of the alleged harm; 2) The defendant owed the plaintiff a duty of care; 3) The defendant breached that duty; and 4) The risk of harm was within the scope of the protection afforded by that duty. *Orr v. Otto Candies, Inc.*, 04-60 (La.App. 3 Cir. 6/9/04), 875 So.2d 1030 (quoting *Posecai v. Wal-Mart Stores, Inc.*, 99-1222 (La. 11/30/99), 752 So.2d 762).

Furthermore, a plaintiff seeking recovery under a theory of strict liability, pursuant to La.Civ.Code art. 2317, must demonstrate, in part, that the condition complained of presented an unreasonable risk of harm. *Orr*, 875 So.2d 1030 (citing *Boyle v. Board of Supervisors*, 96-1158 (La. 1/14/97), 685 So.2d 1080). The unreasonable risk of harm analysis includes consideration of pertinent moral, economic, and social factors. *Id.*

The mechanism of involuntary dismissal is provided by La.Code Civ.P. art. 1672, which states, in part:

> B.    In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

In its application of Article 1672, a trial court must weigh and consider the plaintiff's evidence, dismissing the matter if it is determined that the plaintiff has not met the applicable evidentiary burden of proof. *Kite v. Carter*, 03-378 (La.App. 3 Cir.

10/1/03), 856 So.2d 1271. "The grant of an involuntary dismissal is subject to the manifest error standard of review." *Id.* at 1274.

In granting the motions for involuntary dismissal in this matter, the trial court explained:

> Article 1672 gives me the right to grant an involuntary dismissal if I do not believe at the close of the plaintiff's case that he or she or they have borne their burden beyond a preponderance of the evidence. I note specifically Phillip v. University Medical Center, which is a Third Circuit case which is cited at 714 So.2d 742. It states that in making a determination on a motion for involuntary dismissal the trial court is not required to review the evidence in the light most favorable to the plaintiff as I would in some cases.
>
> Mr. Zohdy [counsel for the plaintiffs], I'm going to dismiss this suit with respect to all defendants. It's not your fault. It's just there's no way with the facts that you have available to you to be able to prove in my view more likely than not that this police officer or these people did anything or breached any duty, I should say, to Mr. Comeaux. Frankly, I don't think any of us will ever find out all that happened.
>
> . . . .
>
> . . . But that doesn't change the fact that I can't find under the circumstances that it's more probable than not that these defendants did anything to cause his - - violated any duty which caused his demise. I suggest to you, however, that it very well may be that they had some horseplay going on in this truck that may have had something to do with his ultimate death. But that's for another day or somebody else.

Our review of the record in this matter reveals no manifest error in the trial court's determination that the plaintiffs failed to meet the applicable burden of proof.

The plaintiffs point to a number of actions/inactions by which they assert the defendants breached duties owed to Mr. Comeaux. The central focus of their presentation appears to have been that any physical altercation between Mr. Callais and Officer Darby led to Mr. Comeaux's death. However, a portion of the plaintiff's own presentation of evidence, alone, supports the trial court's ultimate determination. Both Mr. Callais and Officer Darby denied striking Mr. Comeaux, instead reporting

6

that Mr. Comeaux and Mr. Thibodeaux were eventually told to leave the property. The trial court was free to accept this testimony. Furthermore, although the plaintiffs presented witness testimony indicating that the encounter with Mr. Callais and Officer Darby was physical in nature, this testimony was less than clear, one version being offered by a witness who admitted to having approximately sixteen or seventeen alcoholic beverages prior to witnessing the events to which he testified.

Finally, even if the trial court had decided that the defendants were responsible for a battery upon Mr. Comeaux, there is no proof that any such battery led to his death. Dr. Charles Boustany, Lafayette Parish Coroner, reviewed the Certificate of Death entered into evidence explaining that brain death was the listed cause of death. Dr. Boustany also explained that the certificate further references a closed head injury and blunt force trauma to the head. On questioning from counsel for the plaintiffs, Dr. Boustany testified that he felt that given the history provided by investigating personnel, the blunt force trauma to the head "was caused by falling out of the back of a truck." Although he admitted that a blow from a fist could possibly cause such damage, Dr. Boustany explained that it was "not as likely."

Troopers Benny Broussard and Detective Sergeant Tim Hanks of the Louisiana State Police also testified regarding the investigation into Mr. Comeaux's cause of death. Detective Hanks explained that it was his conclusion that Mr. Comeaux "sustained the fatal injuries as a result of falling out of the back of the pickup truck." Detective Hanks explained that, in the course of his investigation, over fifteen witnesses were interviewed. He also stated that he had the benefit of the report of Corporal David Anderson of the Lafayette Police Department. According to Detective Hanks, Corporal Anderson reported that there was a pool of blood on the

roadway where Mr. Comeaux was found, but that no blood was found in the back of the truck. Detective Hanks was asked whether: "There would have been blood in the back of the pickup truck had someone unconscious with a fractured skull and a large laceration [been] placed in the back of the truck; correct?" Detective Hanks responded: "Yes, Sir. And that's according to Dr. Hurst, who told us that there would be a large amount of blood lost due to that type of injury." This type of testimony supports the trial court's determination that the plaintiffs failed to produce evidence sufficient to prevail on their claim.

Finally, the plaintiffs alleged that, due to Mr. Comeaux's intoxication, he was improperly removed from the property by Mr. Callais and Officer Darby. The plaintiffs argue that a duty was breached in permitting another patron to transport Mr. Comeaux from the premises, in failing to call for medical assistance for Mr. Comeaux, or in placing Mr. Comeaux in the back of Mr. Thibodeaux's truck. Again, the record supports the trial court's determination that the plaintiffs failed to sustain their burden of proof in this regard.

The witness testimony is confusing as to what occurred at the time Mr. Thibodeaux and Mr. Comeaux were ordered from the property and to what degree they were assisted by Mr. Callais and Officer Darby. Mr. Callais testified that customer Johnny Granger offered to give Mr. Comeaux a ride home, and that he did not know how Mr. Comeaux left the premises as he had returned to the club to manage another problem after Officer Darby arrived. Officer Darby denied placing Mr. Comeaux in the back of the truck, stating that Shawn Andrus offered a ride to Mr. Comeaux. Officer Darby denied knowing which vehicle Mr. Comeaux went to upon leaving. Both Mr. Andrus and Mr. Thibodeaux denied knowing that Mr. Comeaux

may have been in the back of the truck.  Yet another witness explained that he saw Mr. Callais "knock[] [Mr. Comeaux] out, he picked him up and threw him in the back of the truck."  Given the lack of clarity as to the circumstances surrounding Mr. Comeaux's departure from the property, the trial court was not required to conclude that any action taken or any inaction on the defendants' part was either a breach of a duty owed or was a cause-in-fact of Mr. Comeaux's death.

The plaintiffs' arguments lack merit.

## DECREE

For the foregoing reasons, the trial court's granting of the motions for involuntary dismissal are affirmed.  All costs of this proceeding are assessed to the plaintiffs, Barbara Ann Comeaux, et al.

**AFFIRMED.**