STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

12-398

TRACEY D. KULKA

VERSUS

SHAG II, D/B/A
"THE BULLDOG POOL HALL",
ABC INSURANCE COMPANY, AND
JAMES R. GAUTREAUX

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2010-1288, DIVISION "E"
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of John D. Saunders, Elizabeth A. Pickett, and James T. Genovese, Judges.

AFFIRMED.

Blake R. David
Jerome H. Moroux
Broussard & David, LLC
Post Office Box 3524
Lafayette, Louisiana 70502-3524
(337) 233-2323
COUNSEL FOR PLAINTIFF/APPELLANT:
    Tracey D. Kulka

William H. Eckert
Helen H. Babin
Ungarino & Eckert, LLC
Suite 1280 Lakeway Two
3850 North Causeway Boulevard
Metairie, Louisiana 70002
(504) 836-7556
COUNSEL FOR DEFENDANTS/APPELLEES:
    Shag II Inc. d/b/a The Bulldog Pool Hall
    and James R. Gautreaux

John Kevin Stockstill
Stockstill & Webre, LLC
102 Versailles Boulevard, Suite 310
Lafayette, Louisiana 70501
(337) 237-5051
COUNSEL FOR DEFENDANT/APPELLEE:
    Shag II Inc. d/b/a The Bulldog Pool Hall
    and James R. Gautreaux

Sidney W. Degan, III
Travis L. Bourgeois
Mary K. Cryar
Degan, Blanchard & Nash
400 Poydras Street, Suite 2600
New Orleans, Louisiana 70130
(504) 529-3333
COUNSEL FOR DEFENDANTS/APPELLEES
    Certain Underwriters at Lloyd's, London

Michael J. Remondet, Jr.
Donovan J. O'Pry, II
Jeansonne & Remondet
Post Office Box 91530
Lafayette, Louisiana 70509
(337) 237-4370
COUNSEL FOR DEFENDANT/APPELLEE:
    LCM Foods, LLC d/b/a The Ground Patti

**GENOVESE, Judge.**

In this wrongful death and survival action, Plaintiff, Tracey D. Kulka, appeals the trial court's grant of summary judgment in favor of Defendants, Shag II, Inc., d/b/a The Bulldog Pool Hall, and James R. Gautreaux. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

Plaintiff, Tracey Kulka, is the mother of Kaine Kulka, who either fell or jumped out the bed of a pickup truck being driven by his cousin, Samuel Kulka, and was struck by a hit-and-run vehicle and killed as a result of this series of events. Ms. Kulka filed this wrongful death and survival action against Shag II, Inc., d/b/a The Bulldog Pool Hall, James R. Gautreaux (collectively "The Bulldog"), and others. Ms. Kulka claims that The Bulldog knowingly sold alcohol to Kaine, a person under the lawful age to purchase alcohol,[1] until he became very intoxicated. She asserts liability against The Bulldog on the grounds that the fatal

---

[1] Louisiana Revised Statues 26:90(A)(1) provides as follows:

> A. No person holding a retail dealer's permit and no agent, associate, employee, representative, or servant of any such person shall do or permit any of the following acts to be done on or about the licensed premises:
>
> (1)(a) Sell or serve alcoholic beverages to any person under the age of twenty-one years, unless such person submits any one of the following:
>
> (i) A valid, current, Louisiana driver's license which contains a photograph of the person presenting the driver's license.
>
> (ii) A valid, current, driver's license of another state which contains a photograph of the person and birth date of the person submitting the driver's license.
>
> (iii) A valid, current, special identification card issued by the state of Louisiana pursuant to R.S. 40:1321 containing a photograph of the person submitting the identification card.
>
> (iv) A valid, current, passport or visa issued by the federal government or another country or nation, that contains a permanently attached photograph of the person and the date of birth of the person submitting the passport or visa.
>
> (v) A valid, current, military or federal identification card issued by the federal government containing a photograph of the person and date of birth of the person submitting the identification card.

injuries sustained by Kaine were the result of The Bulldog illegally serving him alcohol and that the subsequent debilitating intoxication led to his death.

The facts in this case are generally not in dispute. It was established that on the night of the accident, Kaine Kulka, Samuel Kulka (Kaine's cousin), Nathaniel Kozma, and Eric Kozma went to The Bulldog. Each of them had their identification checked at the door of the bar. Samuel, Nathaniel, and Eric were all over the age of twenty-one and were given white wristbands. Kaine, who was eighteen years of age, was given an "underage," white and yellow wrist band. After entering The Bulldog, Kaine went to the bar. He ordered an alcoholic beverage, was repeatedly served alcoholic beverages, and began to actively engage in binge drinking. It is undisputed that Kaine consumed alcohol to the point of extreme intoxication.

Samuel testified that, while at The Bulldog, Kaine became "sloppy" and "out of control." Therefore, he moved Kaine from a booth where he had been participating in drinking games and "doing shots" to a bench where Samuel and the others were playing pool. Kaine "passed out" on the floor. Later, as Samuel was dragging Kaine outside, employees of The Bulldog informed Samuel that Kaine would not be allowed back in the bar and that Kaine had a tab that needed to be paid.

Once outside, Samuel initially placed Kaine in the cab of his truck; however, more than once, Kaine exited the vehicle and ran through the parking lot. Samuel then put Kaine in the bed of the truck, where he remained passed out while the others went back into The Bulldog to drink beer and play pool. Periodically, Samuel, Nathaniel, and Eric would return to the truck to check on Kaine. When Samuel saw that Kaine had begun vomiting, he informed Nathaniel and Eric that he was going to take Kaine home.

2

Samuel left The Bulldog with Kaine in the bed of the truck with the tailgate closed and locked. He was traveling on Highway 90 in the direction of Broussard, Louisiana, when he stopped at a gas station. It was then that Samuel noticed that Kaine was no longer in the bed of his truck. After calling Nathaniel and Eric to tell them that Kaine was not in the truck, Samuel began retracing his route. While doing so, and approximately four miles from The Bulldog, Samuel saw vehicles parked near a body that was on the road. Samuel stopped, saw Kaine lying on the roadway, and learned that he was dead. It is unknown whether Kaine fell or jumped from the bed of the truck. According to the autopsy results, Kaine had a blood alcohol content of 0.272% at the time of his death.[2]

The summary judgment evidence further reveals that Steven Wesley Perry was driving down Highway 90 at 1:20 a.m. when he saw a body lying in the roadway. Mr. Perry swerved to avoid hitting the body and turned into a gas station to call 911. As Mr. Perry was on the phone with the 911 dispatcher, he witnessed a pickup truck strike what turned out to be Kaine's body.

The Bulldog filed a Motion for Summary Judgment "on the grounds that the risk that Kaine Kulka would fall or jump out of the bed of a pickup truck and be run over by a hit-and-run driver is beyond the scope of the duty imposed upon Defendants." At the hearing on the Motion for Summary Judgment, the trial court reasoned as follows:

> Of course, this is not an easy one, but it - - I've looked at it and looked at it hard, and I'm still convinced that there's an absence of proof of some of the essential elements of duty/risk analysis and that, specifically, the problem with the intervening cause. And on that basis, I'll grant the Motion[] for Summary Judgment. It's not to say that another court may disagree, because it's [sic] some real questions, but I'm satisfied that there was an intervention of causation, in a

---

[2] Although Kaine was not driving the truck, we note that, pursuant to La.R.S. 14:98, the legal limit for operating a vehicle is a blood alcohol concentration of 0.08%, and that Kaine's blood alcohol concentration level was more than three times that amount.

sense. The placing of a drunk cousin - - [a]nd it's hard to say that, but it's the truth - - and the failing to take proper care of the cousin[] of the deceased - - now deceased person, failure to put him in a safe position within the truck, rather than leaving him in the body of the truck, which, in fact, ultimately led to his death. So I find that it's an intervening cause[] which mandates that summary judgment be granted.

The trial court, therefore, granted The Bulldog's Motion for Summary Judgment, and Ms. Kulka appealed.

## ASSIGNMENTS OF ERROR

On appeal, Ms. Kulka presents the following assignments of error for our review:

1. The [trial] court erred in granting The Bulldog's Motion for Summary Judgment.

2. As the moving party, The Bulldog failed to carry its burden of proof that no genuine issue of material fact existed as to The Bulldog's responsibility in causing Kaine Kulka's death.

## LAW AND DISCUSSION

Our Louisiana Supreme Court has instructed us on the standard of review relative to a motion for summary judgment as follows:

> A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Duncan v. U.S.A.A. Ins. Co.*, [06-363 (La.11/29/06)], 950 So.2d 544, [*see* La.Code Civ.P.] art. 966. A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.* whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Wright v. Louisiana Power & Light*, [06-1181 (La.3/9/07)], 951 So.2d 1058[ ]; *King v. Parish National Bank*, [04-337 (La.10/19/04)], 885 So.2d 540, 545; *Jones v. Estate of Santiago*, [03-1424 (La.4/14/04)], 870 So.2d 1002[.]

*Samaha v. Rau*, 07-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882-83 (footnote omitted). Louisiana Code of Civil Procedure Article 966(C)(2) provides:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the

4

> motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

*Gabriel v. Louisiana Organ Procurement Agency*, 10-251, p. 5 (La.App. 3 Cir. 10/6/10), 48 So.3d 1192, 1195, *writ denied*, 10-2515 (La. 1/7/11), 52 So.3d 887.

Cases involving claims for injuries allegedly resulting from the consumption of alcohol require an application of the duty/risk analysis. *Berg v. Zummo*, 00-1699 (La. 4/25/01), 786 So.2d 708 (quoting *Gresham v. Davenport*, 537 So.2d 1144 (La.1989)). The *Berg* court explained that analysis as follows:

> [U]nder the duty/risk analysis, the plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element). *Roberts v. Benoit*, 605 So.2d 1032, 1051 (La.1991) (on rehearing).

*Id.* at 715-16.

### *Duty*

"A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Whether a duty is owed is a question of law. *Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095 (La.3/10/06), 923 So.2d 627, 632-33." *Rando v. Anco Insulations Inc.*, 08-1163, p. 27 (La. 5/22/09), 16 So.3d 1065, 1086. Undisputedly, The Bulldog had a duty to refrain from selling alcohol to Kaine, an individual who was not of the age to legally purchase alcohol. Thus, the duty element on the part of The Bulldog was established.

5

*Breach*

Kaine, who was not of the legal age to purchase alcohol, was allowed to and did purchase alcohol at The Bulldog on the night of his accident. Thus, the second element, i.e., the failure of The Bulldog to conform its conduct to the appropriate standard, was established. Therefore, a breach of the duty by The Bulldog was established.

*Cause-In-Fact*

"As well established in the jurisprudence, the cause-in-fact issue is a question of fact. *Ambrose v. New Orleans Police Dep't Ambulance Service*, 93-3099 (La.7/5/94), 639 So.2d 216, 221 (holding that cause-in-fact is a question of fact); *Peterson v. Gibraltar Sav. & Loan*, 98-1601 (La.5/18/99), 733 So.2d 1198." *Id.* at 1087. Our supreme court explained the element of cause-in-fact as follow:

> There can be more than one cause-in-fact of an accident as long as each cause bears a proximate relation to the harm that occurs and it is substantial in nature. A plaintiff seeking to recover under either negligence or strict liability theories must prove that the negligent act or defect complained of was a cause-in-fact of the injury. *Davis v. State Farm Ins. Co.*, 558 So.2d 636 (La.App. 1 Cir.1990).
>
> . . . .
>
> In *Dixie Drive It Yourself System v. American Beverage Co.*, 242 La. 471, 137 So.2d 298 (1962), we stated that "conduct is a cause-in-fact of harm to another if it was a substantial factor in bringing about that harm." *Id.* at 302. Elaborating on that pronouncement of law, we stated negligent conduct is a substantial factor if the harm would not have occurred without the conduct, i.e., but for defendant's conduct, plaintiff would not have sustained injury. Thereby, we equated the two concepts of substantial factor and necessary antecedent. Malone, Ruminations on Dixie Drive It Yourself Versus American Beverage Company, 30 La.L.Rev. 363, 373 (1970).

*Id.* at 1088-89.

Applying the foregoing to the facts in this case, we find that but for The Bulldog's action of illegally selling alcohol to Kaine to the point of his debilitating intoxication, he would not have been passed out in the back of a truck for this accident to have occurred in the manner that it did. Therefore, we conclude that the illegal sale of alcohol by the Bulldog was a cause-in-fact of Kaine's death.

***Legal Cause***

The concept of legal cause was also explained by the *Rando* court wherein it stated as follows:

> "Regardless if stated in terms of proximate cause, legal cause, or duty, the scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls within the scope of the duty." *Roberts v. Benoit*, 605 So.2d 1032, 1044 (La.1991). "The scope of protection inquiry asks 'whether the enunciated rule or principle of law extends to or is intended to protect this plaintiff from this type of harm arising in this manner.'" *Faucheaux v. Terrebonne Consol. Gov't*, 615 So.2d 289, 293 (La.1993). Although we have unequivocally stated "the determination of legal cause involves a purely legal question," *Todd v. State, Dept. of Social Services*, 96-3090 (La.9/9/97), 699 So.2d 35, 39, this legal determination depends on factual determinations of foreseeability and ease of association. *See Perkins v. Entergy Corp.*, 98-2081 (La.App. 1 Cir. 12/28/99), 756 So.2d 388, 410, *affirmed*, 00-1372 (La.3/23/01), 782 So.2d 606.
>
> . . . .
>
> A risk may not be within the scope of a duty where the circumstances of the particular injury to the plaintiff could not be reasonably foreseen or anticipated, because there was no ease of association between that risk and the legal duty. *Todd v. State Through Social Services*, 96-3090 (La.9/9/97), 699 So.2d 35; *Hill v. Lundin & Associates, Inc.*, 260 La. 542, 256 So.2d 620 (1972). The extent of protection owed by a defendant to a plaintiff is made on a case-by-case basis to avoid making a defendant an insurer of all persons against all harms. *Todd*, 699 So.2d at 39.

*Id*. at 1088-93.

In the case at bar, an exact timeline of the events between Kaine being placed in the back of Samuel's truck and the time of the hit-and- run accident is not known. Samuel testified that it was "[a]fter eleven, late elevens, early twelves"

7

when he drug Kaine out of the bar. Thereafter, Kaine was placed in the cab of Samuel's truck twice; but, according to Samuel, he "kept getting out of the truck and running around in the parking lot." He estimated that it took fifteen to twenty minutes for them to get Kaine "under control." The decision was then made to put Kaine in the bed of the truck. Once Kaine was asleep in the bed of the truck, Samuel moved his vehicle to another location in the parking lot so that he was better able to see his truck from inside the bar. Samuel, Nathaniel, and Eric then returned to the bar. Both Samuel and Nathaniel stated that they took turns going outside to check on Kaine, but their recollections were somewhat different. Samuel testified that he did so twice; whereas, Nathaniel estimated that they each took approximately ten-to-fifteen minute turns, and he estimated this was done four or five times. During this time, Kaine remained passed out in the back of the truck. It was only after Samuel noticed that Kaine had vomited on himself in and on the bed of the truck that he decided to take him home.

It cannot be determined from the record exactly what time Samuel left the premises of The Bulldog with Kaine in the bed of the truck. At one point, Samuel stated that after leaving Kaine in the bed of the truck, they remained inside The Bulldog for another thirty to forty-five minutes. Later, he estimated it to be approximately 12:30 a.m. when he left The Bulldog with Kaine. Yet, the credit card receipt signed by Samuel, which he stated was done upon his leaving the bar, was signed at 10:37 p.m. The hour that can be determined with certainty is the 911 call which was placed at 1:20 a.m.

Therefore, based upon the record, at least an hour and a half had elapsed from The Bulldog's illegal sale of alcohol to the time of Kaine's accident.[3]

_____

[3] This is true if we assume Samuel's estimate to be correct that it was approximately midnight that he took Kaine out of the bar.

Notably, based on the evidence presented, two and a half hours could have elapsed in that interim.[4] Additionally, the choice to place Kaine in the bed of Samuel's truck was the decision of Samuel, Nathaniel, and Eric.[5] This decision was made despite the obvious degree of intoxication of Kaine and was done so that they could return to the bar to continue to drink beer and play pool. It was only after Samuel found Kaine in "a pile of puke" that he decided to take him home. Moreover, it was Samuel's decision to leave Kaine passed out in the bed of the truck and to proceed to drive home.

Therefore, Kaine's death does not satisfy the foreseeability requirement of the duty/risk analysis because there is no ease of association between the risk and The Bulldog's legal duty not to sell alcohol to an underage person. Although the sale of alcohol by The Bulldog was a cause-in-fact of Kaine's death, The Bulldog could not have reasonably foreseen that its actions would have led to (1) Kaine being placed in the bed of a pickup truck while he was passed out for an undetermined length of time; (2) Samuel driving down the roadway with Kaine in the bed of the truck; (3) Kaine either falling or jumping from the bed of the truck; (4) Kaine landing and remaining in a lane of travel on the roadway; and, (5) Kaine being struck and killed by a hit-and-run driver. Kaine's death, which occurred at least an hour and a half, and possibly as much as two and a half hours, after the sale of alcohol ceased, and which occurred approximately four miles from the premises, was too far removed from the scope of The Bulldog's duty. For these reasons, we find that the illegal sale of alcohol to Kaine by The Bulldog was not the legal or proximate cause of Kaine's death.

---

[4] This is true if we assume that Kaine was removed from the bar at 10:37 p.m. as evidenced by the credit card receipt.

[5] According to Nathaniel, in an effort to subdue Kaine and put him in the bed of the truck, one of them used a wrestling maneuver to "choke him out" and render him unconscious "for a few seconds."

We find the jurisprudence cited by the parties to be distinguishable from the instant matter. We note that some of the cited jurisprudence involves liability sought to be imposed on "social hosts" for the service of alcohol to minors. *St. Hill v. Tabor*, 542 So.2d 499 (La. 1989); *Gresham*, 537 So.2d 1144 (*Gresham* also involved a minor supplying alcohol to other minors). However, in the case at bar, The Bulldog was not a "social host." In some of the cases, the resulting injury occurred on or in close proximity to the premises where the alcohol was supplied. *Millett ex. rel. Millet v. Treasure Chest Casino, L.L.C.*, 02-1096 (La.App. 5 Cir. 3/25/03), 844 So.2d 175; *Comeaux v. Wranglers Night Club*, 04-951 (La.App. 3 Cir. 12/8/04), 889 So.2d 464. However, in the case at bar, Kaine's death did not occur on or in close proximity to the premises. Lastly, in *Berg*, 786 So.2d 708, the intoxicated underage patron was the driver of the vehicle, and the injury occurred in front of the bar. While we agree with Ms. Kulka that "nowhere in *Berg* does the Louisiana Supreme Court address the temporality between the service of the alcohol and the commission of the act[,]" we find that such facts are pertinent to the question of foreseeability and that *Berg* is not binding precedent preventing the grant of summary judgment.

In accordance with La.Code Civ.P. art. 966(C)(2), The Bulldog initially bears the burden of proof in its Motion for Summary Judgment. However, since the burden of proof at trial of the essential elements of the duty/risk analysis would be upon Ms. Kulka, The Bulldog was required "to point out to the court that there is an absence of factual support for one or more elements essential to [her] claim[.]" *Id*. Thereafter, in order to avoid summary judgment, it was incumbent upon Ms. Kulka "to produce factual support sufficient to establish that [she] will be able to satisfy [her] evidentiary burden of proof at trial[.]" *Id*.

Based upon the undisputed facts in this summary judgment proceeding, we find that the risk in this case was not within the scope of The Bulldog's duty and that Kaine's death could not have been reasonably foreseen or anticipated because there was no ease of association between that risk and the legal duty. Though The Bulldog breached its legal duty not to sell alcohol to underage persons, it is not foreseeable that a person would put his cousin, who was drunk, passed out, and had vomited on himself, in the back bed of his pickup truck, lock the tailgate of the truck, and then allow this inebriated person to be driven under those conditions for some four miles before he either jumped or fell out of the bed of the truck, as a result of which he was run over by a hit-and-run driver and died. For the foregoing reasons, we find that Ms. Kulka failed to prove the essential element of legal cause under the duty/risk analysis as to The Bulldog. Therefore, The Bulldog was entitled to judgment as a matter of law.[6]

## DECREE

For the foregoing reasons, the trial court's grant of summary judgment in favor of Defendants, Shag II, Inc. d/b/a The Bulldog Pool Hall and James R. Gautreaux is affirmed. All costs of these proceedings are assessed to Tracey D. Kulka.

**AFFIRMED.**

---

[6] Although the trial court reached this result based upon a theory of "intervening cause," we agree that the element of "legal cause" was not established in this case.